UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MARK H.,

                            Plaintiff,

v.                                                          5:18-CV-1347 (ATB)

COMM'R OF SOC. SEC.,

                            Defendant.

_____

APPEARANCES:                             OF COUNSEL:

CONBOY, MCKAY, BACHMAN          PETER L. WALTON, ESQ.
& KENDALL, LLP
Counsel for Plaintiff
407 Sherman Street
Watertown, NY 13601-9990

U.S. SOCIAL SECURITY ADMIN.          KATHRYN S. POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278


ANDREW T. BAXTER, United States Magistrate Judge


**DECISION and ORDER**

        Currently before the Court, is this Social Security action filed by Mark H. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g).  This matter was referred to me, for all proceedings and entry of a final

judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions

of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the

parties. (Dkt. Nos. 3, 5). The parties have filed briefs (Dkt. Nos. 7, 10) addressing the administrative record of the proceedings before the Commissioner (Dkt. No. 6).[1]

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1957, making him 57 years old as of the alleged onset date and 60 years old on the date of the ALJ's decision. Plaintiff reported completing the twelfth grade. He had no past relevant work for the purposes of determining disability. At the initial level, Plaintiff alleged disability due to a stroke, colon cancer (Stage 3, in remission), high blood pressure, high cholesterol, sleep apnea, and migraines. (T. 171.)

### B.    Procedural History

Plaintiff applied for disability insurance benefits on May 28, 2015, alleging disability beginning on April 18, 2015. Plaintiff's application was initially denied on September 2, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ John P. Ramos, on October 10, 2017. (T. 23-43.) On December 1, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 7-22.) On September 18, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

### C.    The ALJ's Decision

In his decision (T. 12-17), the ALJ found that Plaintiff met the insured status

---

[1] The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

requirements of the Social Security Act through September 30, 2020. (T. 12.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 18, 2015, the alleged onset date. (*Id.*) The ALJ concluded that Plaintiff had severe impairments including degenerative disc disease of the lumbar and cervical spine. (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 13.) Specifically, the ALJ considered Listing 1.04 (disorders of the spine). (*Id.*) The ALJ found that Plaintiff had the RFC to perform the full range of medium work. (*Id.*) The ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (T. 17.) The ALJ therefore found that Plaintiff was not disabled. (*Id.*)

### D.    Issues in Contention

In his brief, Plaintiff argues that the ALJ failed to properly weigh the medical opinions of consultative examiner Rita Figueroa, M.D.; orthopedic providers Howard Huang, M.D., Steven Fish, M.D., and Michael Mcelheran, P.A.; primary care provider Edmund Roache, Jr, M.D.; and physical therapist Jeffrey Auerbach, D.P.T. (Dkt. No. 7, at 10-13.) Plaintiff also contends that the ALJ failed to properly evaluate his subjective statements and symptoms including pain. (*Id*. at 14-16.) Finally, Plaintiff maintains that the RFC for the full range of medium work is not supported by substantial evidence. (*Id*. at 16-18.)

Defendant argues that the ALJ properly determined Plaintiff's RFC, which was supported by substantial evidence including the opinion of Dr. Figueroa; Plaintiff's treatment history, particularly his improved functioning following physical therapy; and Plaintiff's extensive daily activities. (Dkt. No. 10, at 7-8.) Defendant also maintains that the ALJ

properly evaluated the medical evidence in determining the RFC, reasonably weighing and resolving the conflicting opinions of the various providers who examined or treated Plaintiff. (*Id*. at 8-17.)  Finally, Defendant argues that the ALJ properly evaluated Plaintiff's subjective statements.  (*Id*. at 17-21.)  The Court agrees with the Defendant and will affirm the decision of the Commissioner.

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.     DISCUSSION

### A.     The ALJ's Analysis of the Opinion Evidence and RFC Determination are Supported by Substantial Evidence

#### 1.   Applicable Law

##### a.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing

how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

Medium work involves, inter alia, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "The distinction between medium work and light or sedentary work is the ability to lift and carry greater weight." *Torres v. Comm'r of Soc. Sec.*, 6:12-CV-231 (GLS/ATB), 2013 WL 103573, at *5 (N.D.N.Y. Jan. 8, 2013), *Report-Recommendation adopted*, 2013 WL 103595 (N.D.N.Y. Jan. 8, 2013). A person who can perform medium work is also presumed to be able to perform light and sedentary work. 20 C.F.R. § 404.1567(c). Light work includes jobs that require "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls." 20 C.F.R. § 404.1567(b). Sedentary work involves sitting, but "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

### b. Consideration of Opinion Evidence

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record,

7

such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

In assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining medical consultants because they are qualified experts in the field of social security disability. 20 C.F.R. § 404.1527(e); *Cobb v. Comm'r of Soc. Sec.*, 5:13-CV-0591 (LEK/TWD), 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014) ("[T]he report of a consultative examiner may constitute substantial evidence to support an ALJ's decision.") (*quoting Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (rejecting plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence because the ALJ relied on the

opinions of the consultative examiner and the medical expert, which contradicted the opinions of treating sources, but were otherwise supported by the record).

### 2. Relevant Evidence

#### a. Dr. Figueroa's Consultative Opinion

In July 2015, Dr. Figueroa examined Plaintiff, who reported that he stopped driving because of blurry vision and that he experienced migraines once per week with medication. (T. 249.) Plaintiff cooked and cleaned when needed, did laundry a couple of times per week, went shopping occasionally, and showered, bathed, and dressed every day. (T. 250.) Dr. Figueroa observed that Plaintiff was in no acute distress, had a normal gait and stance, could perform a full squat, could walk on his heels and toes without difficulty, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 250-51.) Plaintiff had full range of motion in the cervical and lumber spine, with some limitations--negative straight leg raising bilaterally, physiologic and equal deep tendon reflexes in the upper and lower extremities, no sensory deficits, full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. (T. 251-52.) Dr. Figueroa diagnosed stroke, colon cancer, sleep apnea, migraines, and visual loss. She opined that Plaintiff might have a mild limitation for activities requiring fine visual acuity, with "[n]o other limitations seen . . . ." (T. 252.)

The ALJ afforded significant weight to Dr. Figueroa's opinion "to the extent that her findings are supported by the record as a whole" because she had an opportunity to examine Plaintiff and had professional, as well as program expertise. (T. 16.) The ALJ noted there was no evidence that Plaintiff had significant vision issues and, as such, Dr. Figueroa's "equivocal limitation regarding visual acuity is rejected." (*Id*.) The ALJ concluded that, because Dr.

Figueroa identified no other physical limitations, her opinion was consistent with Plaintiff's ability to perform medium work. (*Id*.)

### b. Treating Opinions

Plaintiff's primary care provider since 2005, Dr. Roache, prepared a Medical Source Statement in August 2015. (T. 258-60.) Dr. Roache diagnosed Plaintiff's mechanical back pain and colon cancer, and noted symptoms including severe chronic low back pain and very poor balance. (T. 258.) Dr. Roache opined that Plaintiff could stand/walk and sit up to two hours each during an eight-hour working day, and that he needed a job permitting shifting positions at will. (T. 259.) The primary care physician found that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; could occasionally stoop, crouch/squat, and climb stairs; and could never climb ladders. (T. 259.) Dr. Roache noted that Plaintiff's pain or other symptoms were constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks. (T. 260.) He was found capable of performing low stress jobs, with expected absences of more than four days per month. (*Id*.) Dr. Roache stated that Plaintiff's limitations had been present since January 2015. (*Id*.)

In August 2016, Dr. Roache provided another Medical Source Statement indicating that he had treated Plaintiff every three months for 20 years. Plaintiff's conditions included back pain, colon cancer, and multiple strokes, with symptoms of bilateral leg pain, poor balance, and poor vision. (T. 418.) Dr. Roache also noted that Plaintiff was unable to tandem walk or see outer visual fields, and that he needed a cane or other assistive device while engaging in occasional standing/walking. (*Id*.) He opined that Plaintiff could stand/walk and sit up to two hours each; needed to shift positions at will; could frequently lift and carry up to ten pounds and occasionally lift and carry 20 pounds; could rarely twist, occasionally stoop and climb

stairs; could never crouch/squat or climb ladders; and could use his hands, fingers, and arms each for only 20 percent of a working day.  (T. 419.)  Dr. Roache found that Plaintiff's pain or other symptoms were frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks.  (T. 420.)  Plaintiff was incapable of even low stress jobs, with expected absences of more than four days per month.  (*Id*.)  Dr. Roache noted that Plaintiff's limitations had been present since 2010.  (*Id*.)

The ALJ afforded less weight to Dr. Roache's assessments because he had a "lesser" specialty, and his findings were unsupported by the overall record.  (T. 15-16.)  The ALJ also noted that "Dr. Roache assessed extreme exertional limitations, yet the medical record documents that the claimant was restored to 90% functionality following physical therapy[,]" and that "Dr. Roache's limitations are inconsistent with both the objective medical evidence of record and the claimant's activities of daily living."  (T. 16.)

In January 2016, Dr. Roache referred Plaintiff to North Country Orthopaedic Group because of shoulder pain following a fall.  (T. 295.)  Plaintiff stated he had no neck pain.  (*Id*.) Edward Powell, M.D. administered a Kenalog/Lidocaine injection into Plaintiff's right shoulder, which he tolerated well.  (*Id*.)

In April 2017, orthopedic provider, physician assistant ("PA") Mcelheran saw Plaintiff regarding "ongoing difficulties with his neck and back."  (T. 468-70.)  Plaintiff "had numerous questions about Disability and SSI," but the PA advised that "obviously that is not something we do through our office."  (T. 468.)  In a treatment note co-signed by Dr. Huang, the PA noted that Plaintiff "should probably limit his activities and not lift more than 10 pounds, avoid walking any long distances[, and] [a]void bending and stooping."  (*Id*.)  They opined that Plaintiff "could work if he can follow those types of restrictions."  (*Id*.)

In June 2017, PA Mcelheran saw Plaintiff again regarding "his chronic neck and back pain" which had only mildly improved with physical therapy. (T. 476.) A treatment, note co-signed by Dr. Fish, stated that there were no clear surgical options for Plaintiff, and that he was not interested in pain management or epidurals at that time despite the failure of more conservative treatment. (T. 476.) They recommended that Plaintiff not lift more than ten pounds, not walk more than two blocks, and avoid bending or stooping, noting that he understood that "these are general restrictions fit for somebody with degenerative changes in his lumbar and cervical spine[] . . . ." (T. 476.)

In July 2017, PA Mcelheran and Dr. Huang noted Plaintiff's complaints of worsening troubles with his back and with normal day to day activities. (T. 480-82.) Plaintiff reported that physical therapy had "failed to improve his symptoms[,]" and stated that he was now willing to "give a try at epidurals." (T. 480.) The orthopedic providers declined to complete disability paperwork requested by Plaintiff's lawyer. They again recommended that Plaintiff not lift more than ten pounds, not walk more than two blocks, and avoid bending or stooping, but quite clearly referred to these as "generalized limitations." (T. 480-82.)

The ALJ considered the assessments of PA Mcelheran, apparently adopted by Dr. Huang or Dr. Fish, and afforded them limited weight "because they provided generalized limitations and their findings are inconsistent with both the reported physical therapy results and the claimant's activities of daily living." (T. 14-15.) The ALJ cited physical therapist ("PT") Auerbach's reports (discussed further below) that Plaintiff had experienced signficant improvement with respect to pain and functioning in his back and neck/shoulder. (T. 15, 475, 479.)

### 3. Analysis

Plaintiff contends that the ALJ failed to properly weigh the medical opinions, and the RFC for the full range of medium work was not supported by substantial evidence. (Dkt. No. 7, at 10-13, 16-18.) The Court finds these arguments unpersuasive for the following reasons.

In considering the medical opinion evidence, the ALJ reasonably explained the weight given to the opinions of treating providers. Dr. Roache's found very restrictive limitations in August 2015 and August 2016 that were inconsistent, not only with Dr. Figueroa's examination of Plaintiff in July 2015, but also with the reported physical therapy results and Plaintiff's activities of daily living. (T. 15-16.) In June 2017, the physical therapist reported to the North Country Orthopaedic Group that Plaintiff's back, and neck shoulder pain had been reduced from 6/10 to 1/10, that his back function improved from 60% to 90% and that his neck/shoulder function had improved from 40% to 90%. (T. 15, 479.) Although not an "accepted medical source under Social Security Regulations," "a physical therapist is an 'other source' whose opinion the ALJ may consider regarding the severity of a claimant's impairment and how it affects the claimant's ability to work." *Sixberry v. Colvin*, 7:12-CV-1231 (GTS), 2013 WL 5310209, at *8-9 (N.D.N.Y. Sept. 20, 2013) (opinions of physical therapists are "important and should be evaluated on key issues such as impairment severity and functional effects") (citations omitted). *See also Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389 (W.D.N.Y. 2014) ("the opinions of physical therapists may constitute substantial evidence where the opinions are well documented and supported by the medical evidence.") (citing Social Security Ruling 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006)); *Ortiz v. Saul*, 1:19-CV-00942, 2020 WL 1150213, at *7 (S.D.N.Y. Mar. 10, 2020).

The ALJ relied on Plaintiff's testimony that he lived with his elderly mother and "gives her medicine, prepares her food and performs household chores such as laundry, cleaning, and everything else that needs to be done." (T. 14, 29, 33-34.)  That level of activity is difficult to reconcile with the severe limitations that Dr. Roache endorsed.  *See, e.g., Herrington v. Berryhill*, 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living, including childcare, are an appropriate factor for an ALJ to consider when assessing claimant's claimed symptoms and limitations) (collecting cases); *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (affirming an ALJ's decision not to give controlling weight to the more restrictive opinion of a treating physician based on the opinion of a consultative examiner that plaintiff could perform sedentary work with additional limitations, and the evidence that plaintiff was capable of various activities of daily living, including childcare).

It is also worth noting that, on January 2016, between the dates of his two Medical Source Statements, Dr. Roache referred Plaintiff to the orthopedic specialists, not because of chronic back and neck problems, but because of a shoulder issue following a fall.  (T. 295.) Plaintiff advised the examining orthopedist, "Dr. Roache has taken him out of work because he says he has a backache and he has been applying for SSI disability." (*Id.*)

The ALJ also afforded limited weight to the opinions of the orthopedic treatment providers because they were not supported by Dr. Figueroa's findings, the reported physical therapy results, and Plaintiff's daily activities.  The ALJ also noted that PA Mcelheran recommended restrictions that were generally appropriate for someone with degenerative changes in the lumbar and cervical spine, but made clear that the orthopedic providers would not complete a detailed functional assessment for the Plaintiff.  (T. 14-15, 476, 480.)

As noted, just a few months before Dr. Roache's first Medical Source Statement, Dr. Figueroa examined Plaintiff and opined that he had no physical limitations, other than one relating to his vision. That opinion supports the conclusion of the ALJ that Plaintiff was able to perform the exertional requirements for medium work. *See, e.g.*, *Heburn v. Astrue*, 6:05-CV-1429 (LEK/DEP), 2009 WL 174941, at *8 (N.D.N.Y. Jan. 23, 2009) (the ALJ's medium work RFC "draws support from the findings of [a consultative examiner] who . . . opined that plaintiff has only a mild degree of limitation and lifting, carrying, pushing, and pulling, with no gross limitation noted in sitting, standing, walking, climbing, or bending); *Sherrill B. v. Comm'r of Soc. Sec.*, 5:17-CV-754 (ATB), 2018 WL 4150881, at *6–8 (N.D.N.Y. Aug. 30, 2018) (findings of consultative examiner--that, despite a limited range of motion in her cervical and lumbar spine, plaintiff had no gross limitations with regard to sitting, standing, or walking and "mild" limitations with regard to lifting, carrying, pushing, and pulling--was consistent with an RFC for medium work). The ALJ reasonably afforded significant weight to Dr. Figueroa's opinion based on her opportunity to examine Plaintiff, professional expertise, and program expertise while noting there was no evidence that Plaintiff had significant vision issues. (T. 16.)

Dr. Figueroa's opinion conflicted with the Medical Source Statements of Dr. Roach and was somewhat inconsistent with the opinions of Plaintiff's treating orthopedic providers. It is the role of the ALJ to analyze and reconcile such conflicts in the medical opinion evidence. *See, e.g., Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to

resolve."). The ALJ's RFC analysis included a detailed consideration of the evidence including Plaintiff's symptoms, daily activities (including household chores and caring for his mother), and treatment records, as well as Dr. Figueroa's consultative opinion. (T. 13-16, 29, 33-34, 39, 249-53.) That information constitutes substantial evidence supporting the RFC determination for medium work. *See, e.g., Alston v. Colvin*, 14-CV-0244, 2015 WL 5178158, at *14 (E.D.N.Y. Sept. 3, 2015) (finding the RFC for a full range of medium work was supported by substantial evidence where the ALJ's conclusion was reasonable and based on a thorough review of the record).

Plaintiff argues that Dr. Figueroa's July 2015 report included no review of the underlying medical reports and that the consultative examiner failed to identify Plaintiff's degenerative disc disease of the neck and back or order x-rays of his back and neck. (Dkt. No. 7, at 11.) The other medical opinion evidence was not generated until after Dr. Figueroa's examination of the Plaintiff and was not available to her, although it was fully considered by the ALJ. Dr. Roache did not refer Plaintiff to an orthopedic specialist until January 2016, and that referral related to a shoulder injury, and not degenerative lumbar or cervical disc disease. Moreover, it appears from the consultative examiner's report that the Plaintiff did not include chronic back and neck pain among his complaints to her. (T. 249-50.) Dr. Figueroa did perform a musculoskeletal examination of the Plaintiff and found only minor limitations with respect to the range of motion of his cervical and lumbar spine. The orthopedic specialists did not order diagnostic imaging of his lumbar or cervical spine until the Spring of 2017, and the ALJ considered and discussed the results of those tests. (T. 154, 466-67, 471-74.)

Plaintiff maintains that the ALJ actually rejected Dr. Figueroa's opinion, despite purporting to afford it significant weight, because he rejected the only limitation found by the

consultative examiner and classified Plaintiff's degenerative disc disease of the neck and back as "severe." (*Id.*) Plaintiff's later medical records from the Center for Sight support the ALJ's decision to discount Dr. Figueroa's opinion that Plaintiff had mild limitation for activities requiring fine visual acuity. (T. 251-52.) In January 2016, his treating provider noted that poor vision affected his ability to drive safely, enjoy outdoor activities, read large and small print, recognize faces, use a computer, watch television, and work. (T. 305.) However, by April 2016 following cataract surgery, Plaintiff described his vision as "good" and stated it seemed to be fairly stable. (T. 297, 317-19.) "'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

An ALJ's finding that an impairment is "severe" is a legal determination that the impairment significantly limits his ability to do basic work activities. A consultative examiner's *medical* determination that a claimant does not have a particular limitation is not necessarily incompatible with an ALJ's *legal* determination that such a limitation is "severe." The ALJ determined that Plaintiff could perform medium work, but not work at all exertional levels. Based on subsequent medical evidence, the ALJ could properly make an RFC determination that may have been somewhat more limited than Dr. Figueroa's findings of no physical impairments might suggest. *See, e.g., Beckles v. Comm'r of Soc. Sec.*, 18-CV-321P, 2019 WL 4140936, at *3, 5 (W.D.N.Y. Aug. 30, 2019) (the ALJ did not err by including greater limitations in her RFC determination than those opined by consultative examiner, upon whose opinion the ALJ partially relied) (collecting cases); *Cruz v. Colvin*, 3:13-CV-723

(MAD/TWD), 2014 WL 4826684, at *14 (N.D.N.Y. Sept. 29, 2014) (An ALJ may credit some portion of a consultative opinion, while properly declining to credit those conclusions that are not supported by CE's own examination findings or are inconsistent with other evidence of record).

Plaintiff argues that the ALJ neglected to address Plaintiff's lifting, standing, walking, and sitting abilities in determining his RFC, and failed to cite to any specific evidence to support the conclusion he is capable of lifting the weight corresponding to medium work. (Dkt. No. 7, at 17-18.)  As noted above, the opinion of Dr. Figueroa provided substantial evidence to support an RFC of medium work, which is distinguished from other exertional categories primarily by the ability to lift and carry greater weight.  The ALJ's determination that Plaintiff could perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c) also implicitly included the findings that Plaintiff could perform the other exertional requirements, including the sitting, standing, and walking requirements of light or sedentary work that is subsumed in medium work.  (T. 13-16.)  Dr. Figueroa's opinion, supported by the results of Plaintiff's physical therapy, and his daily activities constitutes substantial evidence that Plaintiff could perform the other requirements of medium work RFC, including the implicit sitting, standing, and walking components.  (T. 16.)  *See, e.g., Dixie v. Commissioner of Social Sec.*, 5:05-CV-345 (NAM/GJD), 2008 WL 2433705, at * 12 (N.D.N.Y. June 12, 2008) (the ALJ's decision to reject the treating physician's opinion regarding plaintiff's ability to walk, stand, and sit is supported by substantial evidence, including the consultative examiner's finding that plaintiff had "[n]o gross limitation to sitting, standing, walking, climbing, bending, or the use of the right upper extremity"); *Schmitt v. Commissioner of Social Sec.*, 5:11-CV-796 (LEK/ATB), 2012 WL 4853506, at *9 (N.D.N.Y.

July 24, 2012) (in relying on the opinion of consultative examiner that the plaintiff, inter alia, had no gross limitation sitting, standing, or walking, the ALJ made an appropriate function-by-function RFC supported by substantial evidence) *Report-Recommendation adopted*, 2012 WL 4853067 (N.D.N.Y. Oct 11, 2012).

For the reasons above, the Court finds the ALJ's consideration of the opinion evidence and Plaintiff's RFC are supported by substantial evidence. Remand is therefore not required on these bases.

### B. The ALJ Properly Evaluated Plaintiff's Symptoms

### 1.    Applicable Law--Evaluation of Symptoms

In evaluating a claimant's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p)). SSR 16-3p provides that the evaluation of symptoms involves a two-step process.[2] 2017 WL 5180304, at *2. The Social Security Administration ("SSA") "will first consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be

---

[2] The Court notes that the standard for evaluating subjective symptoms has not changed in the regulations. Rather, use of the term "credibility" has been eliminated and SSR 16-3p makes it clear that the subjective symptom evaluation is not an evaluation of the claimant's character. 2017 WL 5180304. SSR 16-3p became applicable on March 28, 2016, prior to the ALJ's December 2017 decision in this case. *Id.*

expected to produce an individual's symptoms." *Id*. at *3. "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [SSA will then] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . ." *Id*. If SSA cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, it will "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id*. at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

## 2. Analysis

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (T. 14.) In so doing, the ALJ noted that Plaintiff engaged in a wide variety of activities of daily living including providing care for his elderly mother and using public transportation. (*Id*.) Plaintiff argues that the ALJ failed to properly evaluate his subjective statements and symptoms including pain. (Dkt. No. 7, at 14-16.)

The Court's review of the record supports the ALJ's finding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence of record, which did "not support a finding of disability." (T. 14.)  In weighing the evidence, the ALJ discussed the results of Plaintiff's lumbar and cervical MRIs, the orthopedic treatment notes, and physical therapy reports--the most recent of which indicated substantial improvement in Plaintiff's pain and functioning of his back and neck/shoulder. (T. 14-16, 468, 471-76, 479.)  The ALJ acknowledged Plaintiff had "severe" degenerative disc disease of the lumbar and cervical spine, but based on his review of the evidence, did not find that such evidence supported Plaintiff's statements about the extent of his limitations. (T. 12-16.)

Plaintiff contends that the "ALJ's credibility determination was based in part on his conclusions that plaintiff can perform numerous life activities, without acknowledging the differences between the demands of activities in the home and those of a job outside of the home." (Dkt. No. 7, at 15-16.)  However, substantial evidence supports the ALJ's finding that, based on his admitted daily activities, Plaintiff retained the ability "to lift greater amounts and sit, stand and walk for longer periods than those to which he testified." (T. 14.)  For example, Plaintiff testified at the administrative hearing that he gives his mother her medicine, prepares food for her, and does laundry and cleaning, noting that she does not do much around the home. (T. 29, 33-34, 39.)  He further reported to Dr. Figueroa that he cooked and cleaned when needed, did laundry a couple of times per week, and shopped occasionally. (T. 250.)

The Court finds that the ALJ properly considered the evidence before him, and that substantial evidence supports his evaluation of Plaintiff's symptoms, making remand on this issue unwarranted.  It is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is

supported by substantial evidence. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015)

(quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

      **ACCORDINGLY**, it is

      **ORDERED** that the Commissioner's decision is **AFFIRMED**, and further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED,** and that judgment

be entered for the **DEFENDANT.**


      Dated:  March 23, 2020
      Syracuse, New York

      Hon. Andrew T. Baxter
      U.S. Magistrate Judge